Thank you, Your Honor. May it please the Court, James Kuhn, Swanson, Thomas, Kuhn, and Newton, on behalf of the plaintiff for the Social Security claimant here. This Court in 2009 sent this case back to the Commissioner saying that the hypothetical question that the ALJ had asked the vocational expert should have included not only a limitation to simple repetitive work, but also Brink's moderate limitations in concentration, persistence, or pace. Accordingly, said the Court, we remand so the ALJ can clarify its hypothetical and determine whether Brink is able to perform gainful employment in the national economy. That was not an invitation to go back and redo the entire case. It was a remand so that the ALJ could clarify the hypothetical to the vocational expert. Sotomayor It didn't prevent, it didn't preclude a rehearing, no. I think when the Court said we remand accordingly with what we just said, the hypothetical should have included the model for the limitation to moderate. Kagan I take your argument, and perhaps our disposition was less than perfectly clear, but I don't think we could have been saying that the hypothetical  was a limitation to, you know, concentration, persistence, or pace because those aren't functional work-related limitations, which is what goes into the hypothetical under the RFC regulations and guidelines. So we must have meant that we should determine what other work functions, functional limitations should be included in the hypothetical, and the ALJ found none in the medical record. You're not arguing that we should have, that the ALJ should have included those words in the hypothetical, are you? Roberts In fact, that's what happened in 2006, and the vocational expert at that time found no jobs, understood what it meant. Kagan Well, I think the attorney, were you the attorney then? Roberts I was not. I was the attorney on appeal. Kagan The attorney said 50 percent of normal concentration, persistence, and pace. It's like, well, where did that come from? That's not in any regulation, and that's not a functional limitation. So I'm not sure how that would work. What happened at the transcript ER 190 is that the vocational expert said, I haven't seen a definition of moderate in this context. The ALJ said, I think one-third to two-thirds limitation is what moderate means. Counsel, I was not counsel at the hearing, but another lawyer from our firm was, said, well, it's mild, moderate, severe, excuse me, marked and severe. Those are the possible four things we can do. If you divide those into quarters, which is the most rational thing to do, we would say 25 to 50 is what we've got here with moderate. Kagan But those aren't even for functional limitations. Those are for whether it's severe or not meets the listing. That doesn't translate. I mean, if you look at the mental assessment, the RFC for mental limitations, it says sustained concentration, persistence, and then it translates into ability to carry out very short and simple instructions, ability to carry out detailed instructions. So it translates it into the actual work-related limitations. Roberts I understand. The government has made that argument repeatedly, that this isn't a restriction at all. It should never be included in a hypothetical, and this Court has never adopted that argument. That would ---- Kagan Well, in Stubbs Danielson, we stated the only thing that was in the medical record was simple repetitive tasks, and that responds to the concentration, persistence, and pace. Roberts Right, exactly. Kagan Was there anything else in the record showing functional limitations beyond simple repetitive tasks that the ALJ should have included in the hypothetical? Roberts Again, we believe a moderate limitation of concentration, persistence, and pace is a limitation. The only thing it says it's not is a Social Security ruling, SSR 96-8P. That's binding on the Commissioner, but it's not binding on everyone else, only if it's in accord with the law. If that were the law, all of this Court's jurisprudence around this issue would disappear handily, and one could simply say that is never a relevant limitation, concentration, persistence, or pace. Stubbs Danielson didn't say that. They said on this record. Kagan It says it has to be translated into the functional work-related limitations. Roberts It said on this record where we've got a doctor, Dr. McCollum in Stubbs Danielson said she has no significant limitation in concentration, but simple repetitive work, she can do that. That's on the facts of Stubbs Danielson. This Court held in 2009, in its order, rejected that argument from the government. The government said Stubbs Danielson, it covers it. They rejected it. They distinguished Stubbs Danielson. The government now argues that was incorrect. But the government cannot now go behind this 2009 remand order of this Court. That is binding on the Commissioner. Breyer I think it somewhat turns on how you read the remand. What was the scope of the remand? I mean, frequently when we remand cases to the board or to an ALJ, they routinely conduct a new hearing. Stubbs Danielson Well, they conduct a new hearing. The question is the scope of that hearing. What this judge did was say, I see what the Ninth Circuit said. I disagree. Breyer Well, but when you look at the new medical evidence that was adduced at the new hearing, it somewhat supports. Stubbs Danielson It does. And we have not argued those facts. And then you would have to go back and say, okay, for what period of time? This case is now 15 years old. And so you would have to argue about the merits of disability on that. I mean, so your whole argument here is he just didn't comply with the remand order. Stubbs Danielson He did not. And he explicitly said, I disagree with this order because, citing SSR 968P. He can't do that. This Court's remand order, of course, you have to read and construe the remand order, but when it says hypothetical should have included this specific limitation and then says accordingly we remand to clarify the hypothetical, any reasonable reading of that remand order says he's got to clarify the hypothetical to include that limitation that the Ninth Circuit. Kennedy So you're saying the hypothetical should have included the 25 to 50 percent range? Stubbs Danielson It should have included that. Kennedy And what was the basis, factual basis for that, the medical basis? Stubbs Danielson Well, the ALJ had made that finding, had said moderate limitation of concentration, persistence or pace. And there are. Kennedy And that's quantified as? Stubbs Danielson That was quantified. Again, the ALJ quantified it as one-third to two-thirds. Counsel quantified it as 25 to 50. The V.E. said, okay, I accept that. That's a reasonable limitation and said there were no jobs. That's why the error was harmful, because if this limitation had been included, the result would have been just the opposite. That's why remand should be for payment of benefits, because when the remand order is followed, the claimant is disabled. And the ALJ has to follow the remand order. I'd like to reserve the balance of my time. Roberts Okay. Thank you. Elsberry May I please the Court? Tom Elsberry for the Commissioner. And I guess I'd like to start by responding to Counsel's last point. There is discussion about what moderate equals by the ALJ and the claimant's attorney at the hearing. But it's following, the ALJ had asked that Counsel to define how she defined moderate. Prior to that dialogue, the ALJ says, I define it this way and functionally. And he notes the functional requirements of simple, repetitive two to three steps, tasks. And Counsel says, I disagree. And then the dialogue starts about what moderate means. Nonetheless, the ALJ did not find that that was the definition of moderate. There's no foundation for this assertion. I'm not actually sure where they get these figures. I don't believe that you just take mild, moderate, marked, and severe, and you divide them by 25%. And support for that is that moderate is defined in the record on the medical source statement. And moderate says, some limitation, a little more than slight, but still able to function effectively. Marked says, almost no ability to function any longer. So the ALJ's functional equation is equivalent to the moderate. All right. So the issue of compliance with the order has to fall on whether it's a requirement to put moderate limitations in concentration, persistence, or pace. And no court has ever held that that's a requirement. Well, you know, if you go to the order, to the prior order here, it's pretty clear we said, however, the ALJ's initial hypothetical question to the vocational expert referenced only simple, repetitive work without including limitations on concentration, persistence, or pace. This was error. I mean, what more, if the panel determined that that was error, what more did they need to say? There's a little bit further that is commented on by the panel, and I believe that's actually determinative to the conclusion that it's error. They note the two different RFCs that the ALJ found. Because this is a drug, a DNA case, substance abuse case. So you have to make a determination what the impact of the DNA is. And the RFC there had moderate to marked limitations in concentration. After removing the consideration of the DNA, they found moderate. Let me back up a second. The RFC with DNA concluded with, actually in the RFC, moderate to marked limitations. The RFC without DNA didn't have that. And that, I believe, was the rationale that the Court was relying on. It's like, wait, you're saying you don't have to put moderate in here. You put it in the other RFC, so we're not convinced that you're actually accounting for moderate limitations here. Not that they had to put the words, that the ALJ had to put the words in, but that the ALJ's, the incongruity between those two suggested that the only thing, I mean, the only thing he had removed from the with DNA is moderate to marked. The words moderate to marked limitations. No similar words appeared in the subsequent RFC, and I believe that's where the Court was not persuaded that, in fact, the ALJ had considered moderate limitations. So reading our order, it sounds like we at least contemplated, or it certainly can be read to say, well, ALJ put in the words moderate limitations in concentration, persistence, or pace. Is there any reason why the ALJ could not have done that? I mean, is that a reasonable part of the hypothetical or RFC? That exact wording? Yes. No, in fact, it's not. And to point out the ALJ's comment in the decision where he states I disagree, that is addressing that very dilemma. He has this court order to remand to consider moderate limitations. But we also have the SSR 96-8P that precludes him from using that terminology. But he's got an order from our court. Pardon me? He has an order from our court. Right. So now the ALJ is in a compromised situation. He has an order from the court that is not clear, not clear that those words are what's required to be put in. And he has also a ruling from the agency which he is obligated to follow by order of this court as well. So if he tries to comply by putting in functional limits, translating moderate limitations in concentration, persistence, or pace into functional limits, but then he merely repeats the same functional limitation that we had said is inadequate. Not completely. The first case was simple and repetitive. This case has simple, repetitive, and one or two to three step tasks. That's an important distinction. And all three of those are supported by five different doctors, Dr. Henry, I believe. So there were three psychologists who were cited in the brief. Are those, is that new evidence? Or was that, those were present in the, when the case came up earlier? I believe they were all present except for Dr. Cole. There was an initial hearing in 2010 after the remand by this court which the ALJ suspended to have a consultative examination. And then they reheld the hearing after his report came in. And he relies on that new report as well. Pardon me? He relied on the new report. He does in part. You'll note that he rejects part of it because the evidence is malingering. And I don't know if he was under the influence during this test, but the obvious lack of effort noted by the psychologists. But nonetheless, that report also is consistent with the other doctor's opinions. So this complies completely with Stubbs-Danielson. There, you can articulate moderate limitations. Well, that may be so if it was proper for him to expand the record. I think it was. I think he has authorization to do that. Specifically, 20 CFR 416, 1477b, the you have to go by the steps. The ALJ has to file the appeals counsel remand, which as the district court noted is the same as the court's remand here. It just says do as the court said. Right. So you would think that he would do as we said not conduct a new hearing in this particular case. There was new evidence. There was the new. I mean, counsel is correct. This is an old case. This has been going on for a long time. It was sent back in, well, the last hearing was in 2006, I think, 2009 by this court to address the moderate limitations. And I think the problem with that ALJ decision was it wasn't fully developed by the ALJ. It wasn't fully articulated that what I'm doing here is accommodating moderate limitations and persistence and pace. Here we have that, both testimony before the V or with the VE, the hypothetical, and in his decision. He says these are, these equate to functional work-related limitations of moderate and equates to the moderate limitations and persistence and concentration and persistence or pace. Is there any case or rule that you're aware of that would preclude the ALJ from getting new evidence? I mean, we didn't preclude him. And normally when we allow district courts to do anything that is inconsistent with our mandate, I don't know how that works in the Social Security Act context. Typically, as has already been noted, typically when a case is remanded, it does start, it's de novo. We do a review from the beginning. And I actually see no prejudice in that, despite counsel's objection, because it essentially follows the previous decision, but adding the clarity. Sometimes we remand to send a case back, to revisit one of the steps in the analysis. I'm sorry, pardon me? So sometimes we will send a case back to ALJ, to the ALJ, and we'll say, revisit or reconsider your determination at step 4. Right? And we'll explain why. And that, I always thought that that meant that they would go back on the existing record and do what we told them to do. And instead, as I have learned over time, is that when we send it back, what they do, really do, is they conduct a new hearing. And I never really understood where they get that authority from. I believe it's the result of that, they could do just what happened here. That is, they can generate a record that would then allow them. Well, here to sidestep our mandate. Although the majority of the record that is here was here before as well. Most of those opinions about 1 to 2 or 2 to 3 steps were in the record prior. And the one we did obtain was not all that helpful because of the claimant's behavior at the hearing, or at the evaluation. I would not... As counsel representing the agency, there's oftentimes this remand at step 4, visit this. And I would love it that they would stay on step 4 because then we can focus on that issue. But I believe it's the regulation I cited earlier that gives the agency the authority to reopen it, re-evaluate it, de novo, unless it's explicitly said that you do not have the authority to do this and do this alone. And I have seen orders in that regard. I see my time has lapsed. Thank you. May it please the Court. The argument that simple repetitive work covers concentration, persistence or pace limitation was specifically rejected by this Court in 2009. So when the ALJ this time said, well, it's my view that simple repetitive work does cover that limitation, he is, again, directly contradicting what this Court said. And we also specifically distinguished Stubbs Danielson. I'm sorry. That's correct. That's right. And so the argument of the government at this point that Stubbs Danielson should have controlled or was misinterpreted or that there's a regulation that says that something else should have been done, those are all attempts to reverse the mandate of this Court from 2009, which I believe simply cannot happen. You know, the ALJ may feel compromised when the Commissioner is telling him, follow us, follow Social Security ruling 96AP, but when this Court has said what must happen, it's clear what the ALJ must do. The ALJ is not free to say, well, gee, I'm going to have to obey what the Commissioner says, even though that's not what the Ninth Circuit said. So if it goes back and the hypothetical is framed as the mandate, one construction of the mandate would say, would be add the specific moderate limitation in concentration, persistence, or pace, are you saying that that would then have to, in addition to using those words in the hypothetical, that the VE would have to be told quantifiably as it was done by counsel in the dialogue you were, are there? No, we're not. Put in the 25 to 50 percent range? We are not saying that. You ask the question, and this happens all the time, you ask the question of the VE, and the VE may say, well, I need some more clarification about what that means, or the VE may say, jobs, no jobs, just answer the question. That happens routinely. And who would clarify what moderate limitations in concentration, persistence, or pace means? Well, the VE might understand what that means already, and some VEs do. Some VEs would say, I need some more clarification, and then a discussion, as happened in this case, might occur. Okay, but if some VEs do and some don't, is that who makes the judgment as to whether the VE is properly interpreting it? What's the standard against which their interpretation is measured? It's a factual matter. The VE says, just as the VE would say, well, if you are missing sight in one eye or some other thing, the VE either understands the question or needs further clarification, which happens in many questions that VEs get asked. Well, could you break that down for me? Well, what does that actually mean? And that would be the ALJ's job to do that after hearing argument or reviewing the evidence? The ALJs have different views of this. Some ALJs say, well, I think it means, as this judge said, a certain limitation, just like frequent or occasional or other words like that. ALJs have beliefs about what those things mean, and they interpret them. And so as a matter of fact, the VE can do the same thing. The last thing I'll say is that we routinely, when we file an appeal and the government says, oh, okay, well, let's stipulate to a remand here, we'll agree to that, we negotiate in some detail, okay, what are the terms of the remand. And certainly our expectation always is that on remand that the terms of that remand will be followed. They should in this case. Thank you. Okay. Thank you. Thank you, counsel. That completes our cases for this morning and ends our session for today. Thank you, counsel. Matter submitted.
judges: Fisher, Paez, Ikuta